**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JAMES HINES,

                              Petitioner,

      - v -                                          Civ. No. 9:07-CV-902
                                                          (LEK/RFT)

J. TAYLOR, *Superintendent*,

                              Respondent.

**APPEARANCES:**                             **OF COUNSEL:**

JAMES HINES
Petitioner, *Pro se*
03-A-2600
Attica Correctional Facility
Box 149
Attica, NY 14011

HON. ANDREW M. CUOMO                   PRISCILLA I. STEWARD, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Attorney for Respondent
120 Broadway
New York, NY 10271

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION and ORDER

      James Hines filed this *pro se* Petition for a Writ of *Habeas Corpus*, pursuant to 28 U.S.C. § 2254, alleging that his present confinement is in violation of his constitutional rights. Hines's specific grounds for *habeas* relief are as follows: (1) the prosecutor didn't answer one of his pre-trial discovery demands; (2) narcotic evidence presented at his trial was improperly tested; and (3) ineffective assistance of counsel. Dkt. No. 1, Pet. For the reasons that follow, it is recommended that the Petition be **denied**.

## I. BACKGROUND

By an Indictment, dated June 11, 2002, an Albany County Grand Jury charged Petitioner and Yolanda King, his one-time girlfriend, with Criminal Possession of a Controlled Substance in the Second Degree, Criminal Possession of a Controlled Substance in the Third Degree, and Criminally Using Drug Paraphernalia. Dkt. No. 8, State Court R. (hereinafter "R."), Ex. H, Pet'r § 440 Mot., Appx. at A6-A8, Indictment Nos. D020924 & D020925, dated June 11, 2002. Subsequently, Yolanda King pleaded guilty to Criminal Possession of a Controlled Substance in the Third Degree in full satisfaction of the Indictment against her.[1]

At Petitioner's jury trial, the following testimony was adduced. Police Officer Robert Schunk testified that on April 28, 2002, he responded to a 911 call reporting a "white female screaming and possibly getting beaten" at 125 Philip Street in Albany, New York. R., Trial Tr., dated Mar. 3, 2003, at p. 79. Schunk was greeted at the door by Jeanette Hines, a black female of no relation to Petitioner, who said there was no problem and allowed Schunk to enter the apartment so he could investigate. *Id.* at pp. 80-81. After Schunk entered the apartment, a white female emerged from the kitchen, who, upon questioning, also denied there was any problem. *Id.* at p. 82. When Schunk asked if there was anyone else in the apartment, Hines told him there were two people in the rear bedroom. *Id.* Schunk was proceeding down the hallway toward the back of the apartment when he saw Petitioner exit the rear bedroom, leaving the door ajar. *Id.* at p. 83. Schunk smelled marijuana coming from the bedroom and asked Petitioner if he had been smoking marijuana, to which Petitioner answered affirmatively. *Id.* Schunk looked through the crack in the open bedroom door and observed Yolanda King sitting on a mattress next to a plate of crack cocaine. *Id.* at p. 84.

---

[1] In exchange for a prison sentence of three and two-thirds (3 2/3) to eleven (11) years, King agreed to plead guilty and testify against Petitioner at trial. R., Trial Tr., dated Mar. 3, 2003, at p. 203.

Schunk arrested Petitioner and, after ordering King out of the bedroom and obtaining her consent to search the room, he recovered 95.8 grams of crack cocaine, 21 "tie-offs," each containing a small quantity of crack cocaine wrapped in plastic, a Tupperware container, large and small ziplock bags, a cell phone, a marijuana cigarette, and business cards with the title "Big Man" on one side of the cards and a telephone number with a dollar sign and "50 up" on the other side. *Id.* at pp. 86-87. The telephone number on the cards matched the cell phone recovered in the bedroom. *Id.* at pp. 106-07.

Yolanda King testified that she had been dating Petitioner for two months prior to their arrest on April 28, 2002. The day before such event, King and Petitioner obtained crack cocaine in Manhattan, with plans to sell it in Albany. *Id.* at pp. 180-84, 193, 202, & 214. On the morning of April 28th, King saw Officer Schunk outside the apartment and alerted Petitioner, who was at that time smoking a marijuana cigarette in their bedroom. *Id.* at pp. 178-79 & 197. King watched as Petitioner left the bedroom and "walked right into [Schunk's] arms." *Id.* at p. 259.

Jeanette Hines testified that she helped create the business cards for Petitioner, whose street name was "Big Man." *Id.* at pp. 308-10. Hines acknowledged that she gave Officer Schunk consent to search the bedroom. *Id.* at p. 317. Petitioner did not testify nor present any evidence at trial. *See generally* Trial Tr.

On May 14, 2003, a jury convicted Petitioner of Criminal Possession of a Controlled Substance in the Second Degree (N.Y. PENAL LAW § 220.18(1) *amended by* 2004 N.Y. SESS. LAWS, ch. 738 (McKinney)),[2] Criminal Possession of a Controlled Substance in the Third Degree (N.Y. PENAL LAW § 220.16(1)), and Criminally Using Drug Paraphernalia (N.Y. PENAL LAW § 220.50(2)).

---

[2] On December 14, 2002, the New York State Legislature changed N.Y. PENAL LAW § 220.18, increasing the number of ounces of controlled substance that must be proven to be possessed in order to be convicted of Criminal Possession of Controlled Substance in the Second Degree. 2004 N.Y. SESS. LAWS, ch. 738 (McKinney).

Trial Tr. at pp. 458-60. Petitioner was sentenced as a second felony offender to concurrent, indeterminate prison terms of ten (10) years to life on the second degree drug possession count, ten (10) to twenty (20) years on the third degree drug possession count, and one (1) year on the drug paraphernalia count. R., Sentencing Tr., dated May 14, 2003, at pp. 23-24.

Prior to sentencing, on April 28, 2003, Petitioner filed a N.Y. CRIM. PROC. LAW ("CPL") § 330 Motion to Set Aside the Verdict, in which he raised the following arguments: (1) the evidence was legally insufficient to convict and the verdict was against the weight of the evidence; (2) there was no probable cause for his arrest; (3) the prosecutor failed to turn over certain letters written by Petitioner to Yolanda King; (4) the trial court improperly ordered Defendant to turn over to the prosecution certain letters from King to Petitioner; (5) a hearing was necessary to investigate King's statement in one of her letters that the prosecutors "wanted me to lie on you;" and (6) the prosecution did not prove beyond a reasonable doubt that the substance recovered from the apartment was in fact cocaine because the chemist testified that she had not tested the cocaine sample against which the substance was tested. R., Ex. A, Pet'r § 330 Mot. Br. The trial court summarily denied Petitioner's § 330 Motion. Sentencing Tr. at p. 3.

Thereafter, Petitioner filed a direct appeal to the New York State Supreme Court Appellate Division, Third Department, raising the following grounds for relief: (1) the trial court failed to give jury instructions on accomplice corroboration; (2) the evidence was legally insufficient to convict; (3) ineffective assistance of counsel; (4) lack of probable cause for his arrest; and (5) unduly harsh and excessive sentence. R., Ex. C, Pet'r App. Div. Br. at pp. 5-14. The Appellate Division unanimously denied Petitioner's appeal, affirming his conviction. *People v. Hines*, 24 A.D.3d 964 (N.Y. App. Div. 3rd Dep't 2005). Petitioner's request for leave to appeal to the Court of Appeals was

also denied. *People v. Hines*, 6 N.Y.3d 834 (2006).

On February 14, 2007, Petitioner filed a Motion to Set Aside the Verdict pursuant to CPL § 440.10 raising, *inter alia*, the three grounds for relief brought in the instant *Habeas* Petition. R., Ex. H, Pet'r § 440 Mot. The trial court denied the Motion, stating that "[e]ach of these issues was, or could have been, raised on [] [direct] appeal." *Id.*, Ex. K, Order, dated Apr. 2007,[3] at p. 3. The Appellative Division subsequently denied Petitioner leave to appeal. *Id.*, Ex. M, Order, dated July 9, 2007.

The instant *Habeas* Petition was filed on August 31, 2007. Dkt. No. 1. Respondent concedes that the Petition is timely and that all of the claims have been properly exhausted. Dkt. No. 7, Resp't Mem. of Law at pp. 11-12

## II.  DISCUSSION

### A.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a federal court may not grant habeas relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006); *DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001).

The petitioner bears the burden of proving by a preponderance of the evidence that he is "in

---

[3] The specific date of the Order is indecipherable. *See* R., Ex. K, Order, at p. 4.

custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL 22234697, at *3 (S.D.N.Y. Aug. 28, 2003). The AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d at 66; *Boyette v. LeFevre*, 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams and Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

### B.  Independent and Adequate State Grounds

Federal *habeas* review of a state-court conviction is prohibited if a state court rested its judgment on a state law ground that is "independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 728 (1991) (citations omitted); *see also Harris v. Reed*, 489 U.S. 255, 261-62 (1989); *Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir. 1999); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995). "This rule applies whether the state law ground is substantive or procedural." *Coleman v. Thompson*, 501 U.S. at 729 (citation omitted). The independent and adequate state ground doctrine is jurisdictional, thus, if the state

court "explicitly invokes a state procedural bar rule as a separate basis for decision[,]" the federal court is precluded from considering the merits of federal claims in a *habeas* petition. *Harris v. Reed*, 489 U.S. at 264 n.10.

In this case, Petitioner's bases for *habeas* relief were not raised prior to his § 440 Motion. Although Petitioner brought an ineffective assistance of counsel claim in his direct appeal, it was not based on the allegations presently raised in his *Habeas* Petition. On direct appeal, Petitioner's ineffective assistance claims were that his attorney, Sean J. Doolan, Esq.: (1) failed to request a jury charge regarding corroboration of a co-defendant's testimony; (2) pursued the failing strategy of trying to impeach Yolanda King with previously undisclosed letters she wrote to Petitioner, which backfired when the Court ordered Petitioner to turn over all his correspondences with King, which included highly prejudicial statements concerning an alleged attempt on the part of King and Petitioner to give false testimony; and (3) failed to ascertain prior to trial whether the prosecution would rely on the statutory room presumption, "which would have entitled Mr. Hines to automatic standing to contest the legality of the search and seizure." R., Ex. C, Pet'r App. Div. Br. at pp. 10-11. In his § 440 Motion and now by his *Habeas* Petition, Hines asserts that Doolan: (1) filed inadequate pretrial motions; (2) failed to procure discoverable evidence prior to trial and/or request an adjournment when the prosecutor did not timely provide such discovery; and (3) failed to investigate the prosecution's allegedly faulty proof that the substance recovered was cocaine. Pet. at p. 7; *see also* R., Ex. H, Pet'r § 440 Mot. at pp. 38-42. The remaining two claims brought in the instant Petition, that the prosecutor failed to respond to his discovery demand and the narcotic evidence was improperly tested, were also raised for the first time in his § 440 Motion. *Id.* at pp. 5-6 & 16-22.

In its Order denying Petitioner's § 440 Motion, the trial court noted that "[a] postjudgment motion is not a substitute for an appeal," and "[a] matter is not appropriately raised in a CPL 440 motion if it can be raised in the context of a defendant's direct appeal from the conviction or could have been raised, but was not, in an appeal that was filed." R., Ex. K, Order at p. 2. The trial court concluded that "[e]ach of [the issues Petitioner raised] was, or could have been, raised on the appeal which was decided and therefore this motion must be denied." *Id.* Thus, the trial court denied Petitioner's Motion based on its application of CPL § 440.10(2)(c), which states that a court must deny a motion to vacate a judgment when

> sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's . . . unjustifiable failure to raise such ground or issue on appeal actually perfected by him.

N.Y. CRIM. PROC. LAW § 440.10(2)(c).

The Second Circuit has made clear that the above statute constitutes an independent and adequate state procedural ground for denial of an appeal, barring *habeas* relief when it is relied upon. *See, e.g., Sweet v. Bennett*, 353 F.3d 135, 14041 (2d Cir. 2003) (holding petitioner's claim procedurally defaulted when he "unjustifiably failed to argue his ineffective assistance claim on direct appeal despite a sufficient record, and consequently waived the claim under § 440.10(2)(c)").

Thus, Petitioner's claims were denied on an independent and adequate state ground and are therefore procedurally barred. However, even if we were to reach the merits of these claims, we would find them to be without merit.[4]

### C. Due Process Claims

---

[4] Because we find Petitioner's claims to be without merit, we need not discuss whether he has shown cause for his default resulting in prejudice nor whether our failure to address his claims would result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

1. *Lab Reports*

Petitioner claims that the prosecutor submitted into evidence laboratory test results of narcotics from another source, not test results from the substances recovered upon his arrest. Essentially, Petitioner claims that the prosecutor, apparently in collaboration with Naomi O'Neil, the forensic scientist who testified against him at trial, conspired to submit false evidence in order to prove that the substance recovered from the apartment was cocaine.

To the extent Petitioner is asserting that the chain of custody was inadequate to allow the admission of evidence against him, such claims "generally present questions of state evidentiary law that are not amendable to habeas review." *Lanza v. Lewin*, 2008 WL 4104454, at *10 (N.D.N.Y. Sept. 3, 2008) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). However, the Due Process Clause of the Fourteenth Amendment prohibits the introduction of evidence that "is so extremely unfair that its admission violates fundamental conceptions of justice." *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal citation and quotation marks omitted); *see also Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983) ("Erroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue *only* where petitioner can show that the error deprived her of a *fundamentally fair* trial." (emphasis in original) (citations omitted)). The standard for determining whether an errant admission of evidence deprived a defendant of a fair trial is "whether the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove reasonable doubt that would have existed on the record without it." *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985).

In this case, Officer Schunk testified at trial that, after recovering the substance from the

bedroom, he placed it in a bag, labeled it, and later deposited it into a drug evidence locker at the police station. Trial Tr. at pp. 88-89. Detective Michael Haggerty testified that he took the bag of narcotics from the locker to the crime lab for testing. *Id.* at pp. 157-58. Naomi O'Neil testified that she obtained the recovered substance through the normal intake procedures used at the crime lab, which include the production of a evidence receipt record identifying the specimen to be tested. *Id.* at pp. 276-77. Through O'Neil's testimony, the People's Exhibit Numbers 1 and 2 were introduced into evidence. *Id.* at pp. 287 & 293. People's Exhibit Number 1 was a chunky substance weighing 95.8 grams which, after testing, O'Neil concluded was cocaine. *Id.* at p. 283. People's Exhibit Number 2 constituted several plastic bags each containing a chunky substance; O'Neil tested the substance inside one of those bags and concluded it was also cocaine. *Id.* at pp. 289-92. Exhibit Numbers 1 and 2 correlated with the Second and Third Degree Criminal Possession of a Controlled Substance charges, respectively.

Petitioner asserts that O'Neil's lab reports, which he attached as Exhibits to his *Habeas* Petition, undermine her testimony at trial. Petitioner claims that the lab reports indicate that the combined weight of the substances tested was 7.2 ounces, not the 3.72 ounces that he was accused of possessing in the original Information filed against him. *See* Pet., Attach. at A1. From that discrepancy, Petitioner concludes that the substance O'Neil tested could not have been the same substance recovered during his arrest. However, as Respondent points out, the lab report Petitioner refers to does not refer to a substance weighing 7.2 ounces, but rather a weight greater than two ounces, symbolized as "> 2 oz." *See id.* at A15. This is made clear on the following page of the report, which again puts the weight at "95.8 g (more than 2 ounce[s])." *Id.* at A16. Furthermore, the record makes clear why such notations were made: the prosecution was required to prove beyond

a reasonable doubt that Petitioner possessed more than two ounces in order for the jury to convict on Criminal Possession of a Controlled Substance in the Second Degree. *See* N.Y. PENAL LAW § 220.18(1), *amended by* 2004 N.Y. SESS. LAWS, ch. 738 (McKinney). Therefore, this claim is without merit.

Petitioner also claims that Exhibit 2, consisting of several plastic bags containing drugs, also known as "tie offs," could not have been the tie offs recovered from the apartment at 125 Philip Street because both the original Information and Schunk's testimony at trial indicated that twenty-one (21) tie offs were recovered, and the lab reports indicate only seventeen (17) tie offs were included in the evidence bag sent for testing. Traverse at p. 3 & Attach., Evidence Submission Form, dated Nov. 20, 2002 (indicating that seventeen (17) tie offs were submitted for testing). The record is unclear as to why, of the twenty-one (21) tie offs recovered at the time of Petitioner's arrest, only seventeen (17) were later submitted to Naomi O'Neil for testing. However, such discrepancy does not of its own force undermine the chain of custody that was established at trial, nor the veracity of the test performed on one of those tie offs by O'Neil, which revealed the substance inside one of the bags to be cocaine. Trial Tr. at pp. 287-93. Moreover, if such discrepancy had been raised at trial, it would have gone to the weight of the evidence proffered, not its admissibility. *See Linares v. People of the State of New York*, 2009 WL 2115231, at *4 (S.D.N.Y. May 14, 2008); *see also Tirado v. Senkowski*, 367 F. Supp. 2d 477, 488 (W.D.N.Y. 2005) (stating that whether a sufficient chain of custody was established "was a matter for the jury to decide based upon all the evidence before it" (citation omitted)). Nor is such discrepancy sufficiently material to remove reasonable doubt as to Petitioner's guilt, especially considering the testimony adduced against him at trial by Yolanda King and Officer Schunk.

Because there is no evidence that Petitioner was denied a fundamentally fair trial, we recommend the Petition be **denied** on this ground.

### 2. *Discovery Demand*

Petitioner asserts that his due process rights were violated when the trial court denied his attorney's discovery request. Petitioner references a letter, dated August 14, 2002, that his attorney, Sean Doolan, Esq., sent to Assistant Albany County District Attorney Chris Baines, Esq. Pet., Attach., Lt., dated Aug. 14, 2002. In that letter, Doolan explained that he was recently assigned to Petitioner's case and enclosed a demand for discovery and for a bill of particulars. *Id.* At a pre-trial hearing held on October 31, 2002, Doolan asserted that he hadn't received a response to his discovery demand. R., Suppression Hr'g Tr., dated Oct. 31, 2002, at pp. 8 & 44. Petitioner asserts that such demands were never answered, and that as a consequence, his attorney "was clearly not in a position to argue the admittance or suppression of evidence unknown in my trial." Pet. at p. 5.

Petitioner does not explain what evidence was in the prosecutor's possession that should have been turned over, nor how such evidence would have been favorable to him during the suppression hearing or at trial. *See id.* In his Traverse, Petitioner appears to suggest that the lab reports attached to his Petition were not available at trial due to his attorney's failure to vigorously pursue his own discovery demands. Traverse at pp. 1 & 3. Attached to the Petition are the following lab reports and related documents which Petitioner asserts the prosecution did not turn over despite the discovery demands:

1. Rush Request Form, Lab Case # 02HL2070, dated October 9, 2002, to the New York State Police Forensic Investigation Center
2. Case Notes, dated October 15, 2002
3. Case Report, dated October 17, 2002, signed by Naomi O'Neil

      4.       Evidence Submission Form, dated November 20, 2002, marked submitted by Officer Schunk
      5.       Rush Request Form, Lab Case # 02HL-2070, dated January 28, 2003
      6.       Supplemental Case Report, dated February 3, 2002 (unsigned)

Pet., Attachs.

With respect to Documents ##1 and 5, these documents are forms requesting lab analyses that provide no substantive information or analysis about the tested substances. *Id.* As Respondent points out, and Petitioner acknowledges in his Traverse, Document #3 listed above, a Case Report dated October 17, 2002, was presented to the defense on October 31, 2002, the date of Petitioner's pre-trial suppression hearing. Suppression Hr'g Tr. at pp. 9-10. Moreover, in his cross-examination of Naomi O'Neil, Doolan referenced her "case notes" (Document #2) and a corresponding "laboratory analysis report" (Document #3). Trial Tr. at pp. 296-97. Both O'Neil and Doolan referred to that Document as the "first report," an indication that both were aware of Document #6, the Supplemental Case Report. *Id.* Finally, Petitioner has submitted a letter from Doolan, dated October 18, 2004, in which Doolan responded to Petitioner's request for documents by enclosing "the laboratory analysis" he requested. Traverse, Attach., Lt., dated Oct. 18, 2004. Thus, it is likely that Doolan possessed such reports in his case file prior to sending them to Petitioner. In sum, the evidence available on the record before us clearly suggests that Doolan was aware of these documents, possessed them at the time of trial, and kept them in his case file, even if they were not formally introduced into evidence at trial.

But, even if we were to assume that the prosecution failed to turn these documents over, there could be no constitutionally significant prejudice levied upon Petitioner for the reasons discussed in the previous subsection. *See supra* Part II.C.1. As explained earlier, the lap reports Petitioner relies on do not totally undermine the chain of custody established at trial, nor do they

create a reasonable doubt regarding Petitioner's guilt. *Id.* Therefore, it is recommended that the Petition be **denied** on this ground.

### D. Ineffective Assistance of Counsel

Petitioner asserts that "the cumulative effect of errors and omissions [on the part of Doolan] deprived [him] of the constitution [sic] rights [sic] to effective assistance of counsel and a fair trial." Pet. at p. 4. Specifically, Petitioner asserts that Doolan: (1) filed an inadequate pre-trial *omnibus* motion; (2) failed to request an adjournment or continuance after the People failed to reply to his discovery request; and (3) failed to investigate or conduct discovery in his case, which would have revealed a dearth of evidence establishing that the substances recovered at the time of his arrest were in fact narcotics. *Id.* at p. 7.

To establish ineffective assistance of counsel, a *habeas* petitioner must show 1) counsel's representation fell below an objective standard of reasonableness measured by the prevailing professional norms; and 2) prejudice, *i.e.*, there is a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688 & 694 (1984) (cited in *Bell v. Cone*, 535 U.S. 685, 695 (2002)); *see also Aeid v. Bennett*, 296 F.3d 58, 62-63 (2d Cir. 2002); *Brown v. Artuz*, 124 F.3d 73, 79-80 (2d Cir. 1997); *Rattray v. Brown*, 261 F. Supp. 2d 149, 157 (E.D.N.Y. 2003).[5] In determining the reasonableness of counsel's conduct, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland v. Washington*, 466 U.S. at 689.

In this case, the record shows that Doolan moved to suppress statements Petitioner made to

---

[5] In *Williams v. Taylor*, the Supreme Court declared that "the rule set forth in *Strickland* qualifies as 'clearly established Federal law[.]'" 529 U.S. 362, 391 (2000); *see also Sellan v. Kuhlman*, 261 F.3d 303, 309 (2d Cir. 2001).

police near the time of his arrest. Pet'r § 440 Mot., Attach., Order, dated Oct. 9, 2002 (noting Petitioner moved to suppress inculpatory statements). Consequently, the trial court granted Petitioner a *Huntley* hearing.[6] *Id.* At the suppression hearing held on October 31, 2002, Petitioner expressed to the trial court his displeasure with Doolan's representation and requested a new attorney. Suppression Hr'g Tr. at pp. 3-4. Petitioner objected to certain irrelevant requests included in Doolan's *omnibus* motion, which included references to a car and to blood tests, neither of which had anything to do with the facts of the case. *Id.* at p. 4. However, Doolan explained that he simply neglected to remove some "boilerplate" language from his motion papers. *Id.* After a brief discussion, the trial court determined that a *Dunaway* hearing[7] would also be held, but otherwise denied Petitioner's request for new counsel. It is unclear how Doolan's *omnibus* motion prejudiced Petitioner because he was, in the end, awarded both a *Huntley* and a *Dunaway* hearing. Because Petitioner suffered no apparent prejudice by virtue of Doolan's *omnibus* motion, that claim is without merit.

Secondly, Petitioner argues that Doolan should have requested an adjournment due to the prosecution's failure to respond to his discovery request. However, as discussed earlier, there is no indication as to what evidence was not provided to Petitioner, if any, nor how such evidence would have helped his cause. As such, this claim is also without merit.

Third, Petitioner asserts that counsel failed to discover the lab reports which, he asserts, prove that the substance tested was not the substance recovered at the apartment, and that he failed

---

[6] *See People v. Huntley*, 15 N.Y.2d 72 (1965) (adopting a procedure for providing a separate hearing about the voluntariness of a confession to be offered into evidence against a defendant at trial).

[7] *See Dunaway v. New York*, 442 U.S. 200 (1979) *& Mapp v. Ohio*, 367 U.S. 643 (1961). A *Mapp/Dunaway* pre-trial hearing is used to decide whether evidence was obtained in violation of the Fourth Amendment.

to obtain the "real lab report." Pet. at p. 7. However, as discussed above, there is every indication that Doolan did in fact possess the lab reports at the time of trial. *See supra* Part II.C.2. Moreover, there is no evidence that those lab reports were false nor that the chain of custody was somehow incomplete. *Id.* Thus, this claim is also without merit.

Finally, a review of the entire trial transcript shows that Doolan advocated zealously on Petitioner's behalf, objecting to evidentiary submissions, cross-examining witnesses, and providing a cogent opening statement and summation, in which he plausibly suggested that the drugs belonged to Jeannette Hines, a convicted drug dealer and the long-term tenant of the apartment. *See generally* Trial Tr. Therefore, we recommend that the Petition be **denied** on ineffective assistance of counsel grounds.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition for a Writ of *Habeas Corpus* (Dkt. No. 1) be **DENIED**; and it is further

**RECOMMENDED**, that because the Court finds Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), no certificate of appealability should issue with respect to any of Petitioner's claims. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir.) *cert. denied* 531 U.S. 873 (2000); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date: July 28, 2010
    Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge